IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KATHLEEN S. FALVEY,

        Plaintiff,

v.                                                         CIV 03-0848 LAM

JO ANNE B. BARNHART,
Commissioner, Social Security Administration,

        Defendant.

# MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing (*Doc. 13*). In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to having the undersigned United States Magistrate Judge conduct all proceedings and enter final judgment in this case. The Court has reviewed Plaintiff's motion and the memorandum in support of the motion (*Doc. 14*), Defendant's response to the motion (*Doc. 15*), Plaintiff's reply to the response (*Doc. 16*), and relevant law. Additionally, the Court has carefully reviewed and considered the entire administrative record (hereinafter "*Record*" or "*R*."). For the reasons set forth below, the Court **FINDS** that the decision of the Commissioner of Social Security (hereinafter "Commissioner") should be **AFFIRMED** and Plaintiff's motion should be **DENIED**.

## I.  Procedural History

On July 12, 2000, Plaintiff, Kathleen S. Falvey, filed an application for disability insurance benefits. (*R. at 85-87.*) In connection with her application, she alleged a disability since January 18, 2000, due to pain, insomnia, breathlessness, hyper-sensitivities, backache, neck ache, stiffness, joint

pain, weakness, numbness, memory loss, earache and loss of the ability to concentrate. (*R. at 85, 91.*) There is also evidence in the *Record* that Plaintiff suffers from, or complains of, dizziness, shaking spells, fainting, blurry vision, fibromyalgia, leg weakness, depression, arthritis, pulmonary disease, fatigue, sleep problems, and chest pain, and is post-multiple abdominal surgeries. (*R. at 46-48, 205, 220, 226, 245-246, 256-257.*) Plaintiff's application was denied at the initial and reconsideration levels. (*R. at 66, 67.*)

An administrative law judge (hereinafter "ALJ") conducted a hearing on April 4, 2002. (*R. at 35-65.*) Plaintiff was present and testified at the hearing. (*R. at 35-36.*) Plaintiff was not represented at the hearing, although the ALJ informed her of the right to be represented by counsel or a representative at the hearing. (*R. at 37-39.*) On July 25, 2002, the ALJ issued his decision in which he found that Plaintiff was not disabled at step four of the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. (*R. at 17-22.*) The ALJ made the following findings, *inter alia*, with regard to Plaintiff: (1) she meets the nondisability requirements for a period of disability and disability insurance benefits and is insured for benefits through the date of the ALJ's decision; (2) she has not engaged in substantial gainful activity since the alleged onset of disability; (3) she has an impairment or a combination of impairments considered "severe" based on the requirements in 20 C.F.R. § 404.1520(b);[1] (4) her medically determinable impairments do not meet or medically equal one of the listed impairments; (5) her allegations regarding her limitations are not totally credible for the reasons set forth in the decision; (6) all medical opinions in the record regarding the severity of her impairments have been carefully considered; (7) she has the residual functional capacity

---

[1]The ALJ found that Plaintiff has the following severe impairments: osteoarthritis, mild pulmonary disease and a history of fibromyalgia. (*R. at 19.*)

(hereinafter "RFC") for a full range of light work;[2] (8) her past relevant work as a computer aided designer/drafter did not require the performance of work-related activities precluded by her RFC; (9) her medically determinable osteoarthritis, mild pulmonary disease and history of fibromyalgia do not prevent her from performing her past relevant work; and (10) she was not under a "disability," as defined in the Social Security Act, at any time through the date of the decision. (*R. at 21-22.*)

After the ALJ issued his decision, Plaintiff filed a request for review on August 23, 2002. (*R. at 13.*) On July 6, 2003, the Appeals Council issued its decision denying her request and upholding the decision of the ALJ. (*R. at 6-7.*) On July 17, 2003, Plaintiff filed her complaint in this action. (*Doc. 1.*)

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *See Hamilton v. Sec'y. of Health & Human Services*, 961 F.2d 1495, 1497-1498 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Sec'y. of Health and Human Services*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (further citation omitted)).  Substantial evidence is more than a mere scintilla of evidence but less than a preponderance.  *See, e.g., Sisco v. U. S. Department of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993).  In making the

---

[2]More specifically, the ALJ found that Plaintiff has the RFC to: (1) lift and carry up to twenty pounds occasionally and ten pounds frequently; (2) the ability to sit, stand and walk at least six out of eight hours for each activity; and (3) the ability to perform other activities consistent with a full range of light work.  (*R. at 22.*)

substantial evidence determination on review, the Court may not re-weigh the evidence or substitute

its judgment for that of the Commissioner.  *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

### III.  Plaintiff's Age, Education, Work Experience and Medical History

Plaintiff was born on September 2, 1950. (*R. at 85.*)  At the time of the hearing, she was fifty-

one years old.  (*R. at 41.*)  She graduated from high school, has one year of college education and

also has vocational training in computer aided drafting. (*R. at 43-44.*)  During the fifteen year period

prior to her disability determination, Plaintiff worked as a computer aided designer/drafter.

(*R. at 104.*)

Plaintiff has an extensive medical history and most of her medical records relate to her

physical condition.  Additionally, on November 30, 2001, Plaintiff was physically evaluated for the

Commissioner by consultative physician Eugene Toner, M.D. (*R. at 245.*)  Dr. Toner examined

Plaintiff and prepared a report of his evaluation. (*R. at 245-255.*)  Dr. Toner concluded that Plaintiff's

complaints were in excess of objective findings and there was not enough information to give any

kind of diagnosis to account for her myriad complaints. (*R. at 247.*)  He stated, "I cannot specifically

give her any restrictions and will have to state that from a physical point of view, she should be able

to do things that would be considered normal for her age, size, and sex."  (*R. at 248.*)

On November 2, 2000, consultative psychiatrist Rene Gonzales, M.D., performed a

psychiatric examination of Plaintiff for the Commissioner.  (R. at 225.)  Dr. Gonzales examined

Plaintiff and prepared a report of his evaluation.  (*R. at 225-227.*)  Dr. Gonzales diagnosed Plaintiff

with an unspecified depressive disorder.[3] (*R. at 226.*)  He recommended that she participate in

---

[3]Dr. Gonzales diagnosed Plaintiff with "Depressive Disorder NOS" which "includes disorders
(continued...)

individual and family therapy and stated that a trial of antidepressant medication might help her depression.  (*R. at 227*.)  His prognosis for her depression was "good" as long as she followed his recommendations of therapy and medication, in which case he noted "she will be able to do well." (*Id.*)

On November 20, 2000, a state agency physician completed a psychiatric review technique form for Plaintiff (hereinafter "PRTF"). (*R. at 228-241*.)  He found that Plaintiff suffered from an affective disorder, namely unspecified depression, which was not a severe impairment. (*R. at 228, 231*.)  His assessment was affirmed on review by another state agency physician. (*R. at 228*.)

## IV.  Discussion/Analysis

Plaintiff contends that the ALJ erred at steps two and four of the sequential analysis. Specifically, Plaintiff argues that: (1) the ALJ's findings regarding Plaintiff's mental impairment are not supported by substantial evidence; (2) the ALJ failed to follow controlling legal authority in assessing the demands of Plaintiff's past relevant work and finding that she could perform her past relevant work as a computer aided designer/drafter; and (3) the ALJ's assessment of Plaintiff's credibility is contrary to law.  Plaintiff asks the Court to reverse and remand this case for further proceedings.  Defendant argues that the ALJ applied the correct legal standards and correctly determined that Plaintiff is not disabled based on substantial evidence.

---

[3](...continued)
with depressive features that do not meet the criteria for Major Depressive Disorder, Dysthymic Disorder, Adjustment Disorder With Depressed Mood . . . or Adjustment Disorder With Mixed Anxiety and Depressed Mood."   American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 381 (4th ed., Text Revision, 2000) (hereinafter "DSM-IV").

For the reasons set forth below, the Court **FINDS** that the Commissioner's decision is supported by substantial evidence in the *Record* as a whole, comports with relevant legal standards and should be **AFFIRMED**.

### A.  Assessment of Plaintiff's Mental Impairment

Plaintiff contends that the ALJ erred at step two of the sequential evaluation process by failing to conclude that her mental impairment was severe.  According to Plaintiff, the ALJ's assessment of the functional limitations imposed by Plaintiff's mental impairment, done to determine the severity of the mental impairment, is not supported by substantial evidence.  Plaintiff contends that she has moderate limitations in the areas of maintaining social functioning, and maintaining concentration, persistence and pace, and, therefore, should have been found to have a severe impairment.  In support of her argument, Plaintiff cites her testimony and statements in the *Record* and portions of the report of consulting psychiatrist Rene Gonzales, M.D.

At step two of the sequential evaluation process, the ALJ concluded that Plaintiff suffered from a mental impairment under Section 12.04[4] of the Listing of Impairments which was not severe. (*R. at 19.*)  In connection with his evaluation of the severity of Plaintiff's mental impairment, the ALJ assessed the functional limitations imposed by the impairment pursuant to 20 C.F.R. § 1520a and found that: (1) Plaintiff suffered no restriction of activities of daily living, (2) had mild difficulty maintaining social functioning; (3) mild difficulty in maintaining concentration, persistence or pace; and (4) no repeated episodes of decompensation. (*Id.*)  Accordingly, the ALJ found, consistent with

---

[4]Pt. 404, Subpt. P, App.1, of the Social Security Administration regulations lists diagnostic categories of mental disorders.  Section 12.04 is the diagnostic category for "Affective Disorders," which Section 12.04 defines, generally, as: "Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation."

the provisions of 20 C.F.R. § 404.1520a(d)(1), that Plaintiff's mental impairment was not severe. To support his conclusions, the ALJ cited to the PRTF completed and reviewed by the state agency physicians, portions of the report of consulting psychiatrist Rene Gonzales, M.D., the absence of evidence of significant signs and symptoms of a depressive disorder or other psychiatric condition in Plaintiff's other medical records, and the evidence of Plaintiff's subjective complaints in the *Record*. (*R. at 19-20.*)

The Court finds that the ALJ properly assessed the severity of Plaintiff's mental impairment and his conclusions regarding Plaintiff's functional limitations are supported by substantial evidence. With regard to Plaintiff's social functioning, the ALJ noted the opinion of consulting psychiatrist Rene Gonzales, M.D., that Plaintiff was able to relate well to others.  (*R. at 19, 226-227.*)  The ALJ also noted the administrative findings of the state agency physicians who concluded that Plaintiff did not have a severe mental impairment and found, in the PRTF they completed for Plaintiff, that she had only mild difficulties in maintaining social functioning.[5]  (*R. at 19, 238.*)  There is other evidence in the *Record*, reviewed by the ALJ, that supports his finding of a mild limitation in social functioning. In her Daily Activities Questionnaire, Plaintiff reported that she was able to present conflicts in a professional manner, get along well with others and did not have difficulty going out in public.  (*R. at 115-117.*)  Also, Plaintiff testified at the administrative hearing that she interacted with her family and neighbors, and sometimes visited restaurants for take-out, the post office and the grocery store.  (*R. at 50-52, 54, 56.*)  While there is some evidence in the *Record* that Plaintiff had difficulties in social functioning, notably Plaintiff's testimony that she socialized only with family members and had no

---

[5]*Social Security Ruling 96-6p*, 1996 WL 374180, at *1,  provides that administrative law judges should treat opinions of state agency physicians as expert medical opinion of non-examining sources.

hobbies (*R. at 51-52, 53*), and Dr. Gonzales' statements in his report that Plaintiff handles stressful situations by isolating herself and could benefit from treatment with therapy and anti-depressant medication (*R. at 226-227*), this evidence is consistent with the ALJ's finding of mild difficulties in maintaining social functioning and does not warrant a reversal of that finding.

With regard to Plaintiff's concentration, persistence and pace, the ALJ noted the administrative findings of the state agency physicians who found in the PRTF that Plaintiff had only mild difficulties in maintaining concentration, persistence or pace. (*R. at 19, 238.*) The ALJ also noted the opinions of consulting psychiatrist Rene Gonzales, M.D., that Plaintiff was able to care for her basic activities of daily living, manage her own financial affairs, appeared to have an average IQ and did not have any major memory problem. (*R. at 19, 226-227.*) Additionally, the ALJ noted the absence in the *Record* of complaints by Plaintiff to treating physicians of memory and concentration problems and the large volume of letters in the *Record* from Plaintiff documenting a good memory and the ability to write effectively. (*R. at 19, 78-79, 83-84, 133, 144-145, 150-163, 164-167, 176-179.*) While there is some evidence in the *Record* of Plaintiff having problems with memory and concentration,[6] this evidence is consistent with the ALJ's finding of mild impairment in maintaining concentration, persistence and pace, and does not warrant a reversal of that finding.

Plaintiff makes three other arguments related to the ALJ's assessment of Plaintiff's mental impairment. First, citing *Washington v. Shalala*, 37 F.3d 1437 (10th Cir. 1994), she argues that the ALJ failed to inquire how Plaintiff's mental impairment interacted with the functional requirements of her past relevant work. The Court finds *Washington* inapposite because it involved a claimant who

---

[6]For example, Dr. Gonzales noted that Plaintiff's concentration and attention appeared to be mildly impaired (*R. at 226*), and Plaintiff complained of concentration and memory problems in her Disability Report (*R. at 91*).

was found to have a severe mental impairment.  This is a case where the ALJ properly found that Plaintiff did not suffer from a severe mental impairment.  Additionally, it is apparent from the ALJ's decision that he considered Plaintiff's mental impairment in assessing her RFC and thereby satisfied the requirements of *Social Security Ruling 96-8p*, 1996 WL 374184, at *5 (adjudicator must consider limitations and restrictions imposed by all impairments, even those that are non-severe, in assessing RFC).  Second, without citing any authority, Plaintiff argues that the ALJ was required to call a vocational expert to testify at the administrative hearing because Plaintiff suffered from a severe mental impairment.  As discussed above, the ALJ's finding that Plaintiff does not suffer from a severe mental impairment is supported by substantial evidence.  Third, citing *Henrie v. U.S. Department of Health & Human Services*, 13 F.3d 359 (10th Cir. 1993), Plaintiff argues that the ALJ had a duty to pay particular attention to the issue of Plaintiff's mental impairment because she was unrepresented at the administrative hearing.  In this case, the ALJ acknowledged that Plaintiff was unrepresented at the hearing and explained her right to be represented at the hearing.  (*R. at 38-39.*)  He also paid due attention to, and properly assessed her mental impairment.

### B.  Plaintiff's Past Relevant Work

Plaintiff challenges the ALJ's finding at step four of the sequential evaluation process that Plaintiff could perform her past relevant work as a computer aided designer/drafter. (*R. at 21-22.*) Specifically, Plaintiff contends that the ALJ failed to perform the analysis required by *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996) in determining the physical and mental demands of Plaintiff's job as a computer aided designer/drafter.

*Winfrey* requires a three-part analysis to determine if a claimant can perform his or her past relevant work.  This analysis requires that an ALJ: (1) evaluate the claimant's  residual functional

capacity; (2) determine the demands of the claimant's past relevant work; and (3) determine if the claimant can meet the demands of his or her past relevant work given the limitations of the claimant's residual functional capacity. *Winfrey* at 1023. Plaintiff argues that the ALJ erred at step two of the *Winfrey* analysis by failing to develop the record and make specific findings regarding the demands of her past relevant work as a computer aided designer/drafter. The Court disagrees.

The *Record* contains a Work History Report prepared by Plaintiff which includes a detailed description of her work as a computer aided designer/drafter. (*R. at 104-113.*) This report, which includes Plaintiff's resume as an attachment, describes the demands of the computer aided designer/drafter position as it was performed by Plaintiff. (*R. 105-110,112-113.*) This report includes factual information regarding: work hours; job duties; machines, tools and equipment used; technical knowledge and skills used; writing and form completion; and the amount of time each day spent walking, standing, sitting, climbing, stooping, kneeling, crouching, crawling, handling, grabbing, grasping, writing and typing. (*Id.*) It also describes the frequency and circumstances of lifting and carrying; the heaviest weight lifted; weight frequently lifted; and supervisory and lead worker responsibilities. (*Id.*) Plaintiff also testified at the administrative hearing about her job as a computer aided designer/drafter. (*R. at 44-45.*)

In reliance on the *Record*, the ALJ found that Plaintiff retained the RFC to perform activities consistent with a full range of light work. (*R. at 21.*) The ALJ also found that Plaintiff had past relevant work as a computer aided designer/drafter that was "well within" her retained RFC. (*Id.*) While the ALJ made no express finding that Plaintiff's past relevant work as a computer aided

designer/drafter was sedentary or light work,[7] that finding is implicit in his decision that Plaintiff had the RFC to perform her past relevant work.  It is also consistent with the information in Plaintiff's Work History Report.  (*R. at 104-113.*)  The ALJ concluded, in compliance with *Winfrey*, that: (1) Plaintiff retained the residual functional capacity to perform a full range of light work; (2) Plaintiff had past relevant work as a computer aided designer/drafter; and (3) Plaintiff's past relevant work as a computer aided designer/drafter did not require the performance of work-related activities precluded by her RFC.  (*R. at 22.*)

This case is similar to the unpublished case of *Westbrook v. Massanari*, 26 Fed. Appx. 897, 2002 WL 193911 (10th Cir. (N.M.)).  In *Westbrook*, there was evidence of the demands of the claimant's past relevant work as an administrative assistant in a description she prepared and in testimony at the administrative hearing.  *Westbrook* at *903, **5.  Based on that evidence, the ALJ found that the claimant could perform light, semi-skilled work including her past relevant work as an administrative assistant.  *Westbrook* at *902, **4.  On appeal, the claimant argued that the ALJ failed to adequately discuss or consider the demands of her past relevant work in accordance with *Winfrey*. *Id.* at *903, **5.  The Tenth Circuit Court of Appeals affirmed the ALJ's assessment of the demands of the claimant's past relevant work in reliance on the evidence in the record and noted that:

> [O]ur holding in *Winfrey* . . . is not designed to needlessly constrain ALJs by setting up numerous procedural hurdles that block the ultimate goal of determining disability. Rather, its concern is with the development of a record which forms the basis of a decision capable of review.

---

[7]The ALJ found that Plaintiff had the RFC to perform a full range of light work.  (*R. at 21.*) If a claimant can perform light work, he or she can also perform sedentary work absent additional limiting factors, inapplicable in this case, such as the loss of fine dexterity or the inability to sit for long periods of time.  20 C.F.R. § 404.1567(b).

*Westbrook* at *903, **5.  In *Westbrook*, the Court of Appeals found there was substantial evidence in the record that the claimant could return to her past relevant work as an administrative assistant and refused to require more detailed findings regarding the demands of the claimant's past relevant work.  *Id.*

In this case, the Work History Report prepared by Plaintiff and relied on by the ALJ contained a detailed description of Plaintiff's past relevant work and there was sufficient information in this report for the ALJ to determine the demands of Plaintiff's past relevant work.  The Court concludes that the ALJ's reliance on the Work History Report fulfilled his responsibility to obtain adequate factual information about the demands of Plaintiff's past relevant work.  Additionally, the Court concludes that the ALJ's findings that Plaintiff could return to her past relevant work conform to applicable law.

### C.  Assessment of Plaintiff's Credibility

Plaintiff argues that the ALJ erred in assessing Plaintiff's credibility.  The ALJ evaluated the evidence and concluded that Plaintiff's allegations regarding her limitations were not totally credible.  (*R. at 22.*)  Plaintiff argues that her impairment of fibromyalgia is typified by widespread pain, yet its symptoms are entirely subjective.  Plaintiff contends that because she suffers from fibromyalgia, her subjective complaints of shortness of breath, weakness, dizziness, left-sided numbness, shaking spells, fainting, fatigue, pain and sleep problems were improperly discounted by the ALJ.

"Credibility determinations are peculiarly the province of the finder of fact," and will not be overturned if supported by substantial evidence.  *Diaz v. Sec'y. of Health and Human Services*, 898 F.2d 774, 777 (10th Cir. 1990).  However, such deference is not absolute.  *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993).  "Findings as to credibility should be closely and

affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988).

In this case, the ALJ explained his reasons for discounting Plaintiff's testimony regarding her subjective complaints and discussed the evidence he relied on in evaluating Plaintiff's credibility. The ALJ concluded, with regard to Plaintiff's subjective complaints, that while her medical conditions restrict her RFC, "the number and degree of her complaints at the hearing are not supported in the record." (*R. at 20.*)  In support of his conclusion, the ALJ noted the medical records of treating physician John Liljestrand, M.D.  Plaintiff was seen by Dr. Liljestrand on May 11, 2000, with "a huge list of complaints and a very remarkable past medical history with symptoms that would be most consistent with some sort of fibromyalgia." (*R. at 20, 205.*)  Dr. Liljestrand's opinion at that time was that Plaintiff appeared to be "overall healthy" (*R. at 205*), and, after a chest x-ray and a cardiac stress test,  he described Plaintiff as "healthy" in a follow-up visit on June 12, 2000 (*R. at 196, 197-218.*)  The ALJ also noted the report of physician Robert Goldstein, M.D., dated October 23, 2000, which concluded, based on pulmonary testing, that Plaintiff may suffer "mild pulmonary restriction." (*R. at 20, 220-224.*)  The ALJ also noted evidence that Plaintiff had endocrinology tests within normal limits in August of 2001.  (*R. at 20, 242.*)  The ALJ also noted the conclusions of Dr. Toner who performed a consultative physical examination of Plaintiff in November of 2001.  (*R. at 20, 245-255.*)  Dr. Toner concluded that Plaintiff's complaints "are in excess of objective findings", there was "not enough information here to give any kind of diagnosis to account for her myriad complaints," and "[t]hese complaints seem to be almost potentially life threatening . . . [h]owever, no pathology has been found that would indicate that she needs any specific medical treatment." (*R. at 247-248.*)  In the absence of objective findings or diagnosis, Dr. Toner concluded that physically Plaintiff,

"should be able to do things that would be considered normal for her age, size and sex." (*R. at 248.*) The ALJ also noted negative test results in the medical records of treating physician Marcos Maldonado, M.D. (*R. at 20-21, 256-259.*)

In this case, the ALJ closely and affirmatively linked his credibility findings to substantial evidence in the *Record*. The ALJ properly analyzed Plaintiff's testimony and the other evidence in the *Record* and outlined the reasons for his evaluation of Plaintiff's credibility. The reasons given by the ALJ for his findings regarding Plaintiff's credibility comply with applicable law and are supported by substantial evidence in the *Record*.

.

## V. Conclusion

Based on the foregoing, the Court **FINDS** that the Commissioner's decision is supported by substantial evidence in the *Record* as a whole and comports with relevant legal standards. Accordingly, the Court will **AFFIRM** the decision of the Commissioner and **DENY** Plaintiff's motion.

**WHEREFORE, IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED** and Plaintiff's Motion to Reverse and Remand for a Rehearing (*Doc. 13*) is **DENIED**. A final order will be entered concurrently with this Memorandum Opinion and Order.


_____
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**